CASE NO. 15-1486

In The

# United States Court of Appeals

For The Fourth Circuit

**Se.H., Individually and by and through his parents and next friends, J.H. and S.H., J.H, S.H.,**

*Plaintiffs - Appellants*,

v.

**BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY PUBLIC SCHOOLS, MAMIE PERKINS, Interim Superintendent, MARY TILLAR, Director of Special Education, PATRICIA DEWITT Coordinator of Special Services, WENDY CHERMAK, Section 504 Resource Pupil Personnel Worker,**

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

———————

BRIEF OF *AMICUS CURIAE*
COUNCIL OF PARENT ATTORNEYS AND ADVOCATES
IN SUPPORT OF APPELLANT

———————

Mark B. Martin
Law Offices of Mark B. Martin, P.A.
One North Charles Street, Suite 1215
Baltimore, Maryland 21201
(410) 779-7770

*Counsel for Amicus Curiae*

## RULE 26.1 CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amicus* Council of Parent Attorneys and Advocates ("COPAA") states that it is a non-profit association, does not have a publicly owned parent corporation, subsidiary, or affiliate, has not issued shares or debt securities to the public, and, as a result, no publicly held company owns 10 percent or more of the stock of *Amicus*.

*s/ Mark B. Martin*
Mark B. Martin

Dated: July 22, 2015

i

# **TABLE OF CONTENTS**

RULE 26.1 CERTIFICATION……………………………………………………..i

TABLE OF AUTHORITIES……………………………………………………...iii

STATEMENT OF INTEREST OF *AMICUS CURIAE*……………………………1

INTRODUCTION AND SUMMARY OF ARGUMENT…………………………2

FACTUAL BACKGROUND……………………………………………………3

ARGUMENT……………………………………………………………………3

    A. The District Court's Decision is Inconsistent with the Statutory Goal in Section 1415(*l*) of the IDEA, Which Explicitly Seeks to Safeguard Section 504 and ADA Claims For Students Covered by the IDEA……………..…3

    B. The Decision Below Results in an Incoherent Interpretation and Application of the IDEA, Section 504 and the ADA………………….…..7

    C. The District Court Decision Ignores Mandatory Procedural Requirements in Section 504 and the ADA and Fundamental Constitutional Due Process Protction…………………………………………………………….…..14

CONCLUSION…………………………………………………………….…..17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
548 U.S. 291 (U.S. 2006)………………………………………………………..7

*Bowers v. Nat'l Collegiate Athletic Ass'n,*
563 F.Supp.2d 508, 533 (D.N.J. 2008)…………………………………….....11

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954)……………………………………………………….....14

*CG v. Pennsylvania Dep't of Educ.*,
734 F.3d 229 (3d Cir. 2013)……………………………………………….....10

*Dolan* v. *Postal Service*,
546 U.S. 481 (2006)……………………………………………………….8

*Ellenberg v. New Mexico Military Inst.,*
572 F.3d 815, 822 (10th Cir. 2009)……………………………………………11

*Gibson v. Berryhill,*
411 U.S. 564, 579 (1973)……………………………………………….....16

*Goldberg v. Kelly,*
397 U.S. 254, 256-258 (1970)……………………………………………16

*Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*,
530 U.S. 1 (2000)………………………………………………………..7

*Hornstine v. Township of Moorestown Bd. of Educ.*,
263 F. Supp. 2d 887 (D.N.J. 2003)……………………………………..…10

*K.D. ex rel J.D. v. Starr,*
55 F.Supp. 3d 782 (D. Md. 2014)……………………………………...…11

*K.M. v. Tustin Unified Sch. Dist.*,
725 F.3d 1088 (9th Cir. 2012)……………………………………..……10

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
131 S. Ct. 1325 (2011)……………………………………………..…………..8

*Mark H. v. Lemahieu*,
513 F.3d 922 (9th Cir. 2008)……………………………………………....12

*Oberti v. Bd. of Educ. of the Borough of Clementon*,
801 F.Supp. 1392, 140405 (D.N.J. 1992)……………………………..……………11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)……………………………………………….……………9

*Plyler v. Doe*,
457 U.S. 202, 221 (1982)……………………………………………..………..14

*Sebelius v. Cloer*,
133 S. Ct. 1886 (2013)……………………………………………….……8,9,13,14

*Smith v. Robinson*,
468 U.S. 992 (1984)……………………………………………..………..4

*Tennessee v. Lane*,
541 U.S. 509 (2004)……………………………………………………..3

*Turney v. Ohio*,
273 U.S. 510, 531-533 (1927)………………………………………………16

*Ward v. Monroeville*,
409 U.S. 57, 59-60 (1972)………………………………………………..16

**STATUTES**

20 U.S.C. § 1415(*l*)……………………………………………..…………3,.4,10

20 U.S.C. § 1401(9)………………………………………...……………………13

29 U.S.C. § 790……………………………………………………………4

42 U.S.C. § 12101……………………………………………………………4

42 U.S.C. § 12101(a)(3)………………………………………..…………..3

iv

42 U.S.C. § 1983…………………………………………………………...1, 4

Americans with Disabilities Act,
42 U.S.C. § 12131, *et seq*…………………………………………………passim

Handicapped Children's Protection Act of 1986,
Pub. L. No. 99-372……………………………………………………………4

Individuals with Disabilities Education Act ("IDEA" or "Act"),
20 U.S.C. § 1400, *et seq*……………………………………………………1

Individuals with Disabilities Education Act,
20 U.S.C. § 1400, *et seq*…………………………………………...passim

National Childhood Vaccine Injury Act of 1986,
42 U.S.C.  300aa-1, *et seq*…………………………………………………9

Section 504 of the Rehabilitation Act of 1973………………………passim

## RULES

34 C.F.R. § 104.36………………………………………………………...15

34 C.F.R. § 104.33(b)(1)…………………………………………..………12

C.F.R. § 210.23(b)……………………………………………...………13

## ARTICLE

David M. Driesen, *Purposeless Construction*,
48 Wake Forest L. Rev. 97, 98 (2013)………………………………..………5

Mark C. Weber, *Procedures and Remedies Under Section 504 and the ADA for Public School Children with Disabilities*,
32 J. Nat'l Ass'n Admin. L. Judiciary 611, 632 (2012)…………………..……15

## LEGISLATIVE HISTORY

H.R. REP. NO. 296, 99th Cong., 1st Sess. 4 (1985) ("H.R. REP. NO. 99-296").........4

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

**Council of Parent Attorneys and Advocates ("COPAA")** is a not-for-profit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes effective educational programs for children with disabilities can only be developed and implemented with collaboration between parents and educators as equal parties. COPAA does not undertake individual representation for children with disabilities, but provides resources, training, and information for parents, advocates and attorneys to assist in obtaining the free appropriate public education ("FAPE") such children are entitled to under the Individuals with Disabilities Education Act ("IDEA" or "Act"), 20 U.S.C. § 1400, *et seq*. COPAA also supports individuals with disabilities, their parents and advocates, in attempts to safeguard the civil rights guaranteed to those individuals under federal laws, including the Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (codified as amended at 42 U.S.C. § 1983) ("Section 1983"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794  ("Section 504") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. ("ADA"). COPAA brings to this Court a

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, *Amicus* certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *Amicus* and its members and counsel contributed money intended to fund the brief's preparation or submission.

- 1 -

unique perspective of parents and advocates for children with disabilities and their experiences with the challenges faced by such children, whose success depends not only on the right to secure the FAPE promised by the IDEA and Section 504, but also upon the enjoyment of all rights under federal law guaranteed to students, whether or not they receive special education.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court's decision in this case is inconsistent with unambiguous statutory language that preserves Section 504 and ADA protections for students who are also covered by the IDEA. By ignoring the separate and distinct 504/ADA anti-discrimination and FAPE requirements, the court committed an error emblematic of a common misreading and analysis of the three (3) laws. As discussed more fully, *infra,* these statutes reflect Congressional intent to afford students not only the right to a FAPE under the IDEA, but also the right to be educated as adequately as their peers without disabilities, to be provided services comparable to those afforded their peers without disabilities, and to have access to a fair and impartial review when a disagreement arises about the provision of services under Section 504 and the ADA. The district court's decision ignores plain language of the laws and results in an incoherent interpretation of federal law. Moreover, the deprivation of hearing rights related to 504/ADA claims implicates not only

regulations implementing those civil rights laws but constitutional due process protections.

## FACTUAL BACKGROUND

*Amicus* adopts fully by reference herein the Statement of Facts in the Brief for Plaintiffs-Appellants ("*Appellants' Br.*") at pp. 4-8.

## ARGUMENT

### A. The District Court's Decision is Inconsistent with the Statutory Goal in Section 1415(*l*) of the IDEA, Which Explicitly Seeks to Safeguard Section 504 and ADA Claims For Students Covered by the IDEA

As a policy matter, Congress has recognized that disability-related discrimination in public education presents a problem that we, as a nation, must address. *See, e.g.*, 42 U.S.C. § 12101(a)(3) (listing "education" in the ADA congressional findings section as one of "critical areas" in which disability discrimination exists); *Tennessee v. Lane*, 541 U.S. 509, 525 (2004) (listing "public education" among the sites of discrimination that Congress intended to reach with Title II). To that end, the IDEA includes language designed to protect the ability of children receiving IDEA services to pursue civil rights claims under other federal laws. Specifically, Section 615(*l*) of the IDEA, 20 U.S.C. § 1415(*l*) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101, *et seq*.], title V of the

- 3 -

> Rehabilitation Act of 1973 [29 U.S.C. § 790, *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Congress enacted this provision in direct response to the Court's decision in *Smith v. Robinson*, 468 U.S. 992 (1984). *Smith* held that the Education for the Handicapped Act ("EHA"), a predecessor to the IDEA, provided the exclusive avenue of relief for appropriate education claims. *Id.* at 1008-1009. Thus, the plaintiff in *Smith* could not assert a Rehabilitation Act claim for damages and attorney's fees not available under the EHA.

Congress swiftly responded to *Smith* with the Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372. Congress enacted the provision now codified at 20 U.S.C. § 1415(*l*) "to reaffirm . . . the viability of Section 504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." H.R. REP. NO. 296, 99th Cong., 1st Sess. 4 (1985) ("H.R. REP. NO. 99-296").  In doing so, Congress sought to ensure that school children with disabilities entitled to services under the IDEA retained all other federal civil rights protections.

"Statutory goals, especially those set out in the legislative text or frequently proclaimed in public, tend to reflect public values to a greater

extent than other statutory provisions." David M. Driesen, *Purposeless Construction*, 48 Wake Forest L. Rev. 97, 98 (2013). In this case, the statutory goal of Section 615(*l*) could not be more clear.

Contrary to the district court's holding, the failure to provide a hearing on Se.H.'s Section 504 and ADA claims is not a *de minimis* procedural violation. An administrative hearing officer's disposition of IDEA FAPE claims does not address, in any way, the argument that the failure to provide a 1:1 aide trained in CPR and Heimlich violated Section 504 and the ADA. Failing to acknowledge the distinct differences between IDEA FAPE obligations and Section 504/ADA FAPE and anti-discrimination mandates, the court never substantively analyzed Se.H.'s Section 504 and ADA claims.

The district court's superficial analysis of the issue stated: "Plaintiff complains of procedural irregularities. Assuming that they occurred, they are immaterial because, for the reasons stated, the emergency plan that defendant has in place for Se.H. complies with applicable law." Opinion ("OP") at 3. However, no administrative hearing officer and no judge of any kind has determined that the emergency plan complies with any law other than the IDEA. Because the 504/ADA anti-discrimination protections are separate and distinct from, and additional to, IDEA's protections, it is error to rely upon

- 5 -

the administrative adjudication of the IDEA claims to dismiss the 504/ADA claims. *See, infra,* Section B.

The denial of an impartial hearing on the 504/ADA claims is particularly stark in this case, where Appellees manipulated the process to ensure that a hearing would not occur. Appellants sought a Section 504 Administrative Hearing, via facsimile, on September 10, 2013. Joint Appendix ("JA") at 83-89. On October 15, 2013, subsequent to Se.H.'s request, the Defendants-Appellees Board of Education ("Board") revoked the authority of the Office of Administrative Hearings to conduct Section 504 hearings. Significantly, the Board, in response to discovery requests, could not produce any Board minutes authorizing this revocation. *Appellants' Br.* at 37.

On October 10, 2013, Appellee Wendy Chermak provided Se.H.'s counsel with a Section 504 "request form" but did not reference a hearing. JA at 94. The school district then insisted upon an "Administrative Review" that could not be waived. *Appellants' Br.* at 35. After the "Administrative Review" did not resolve the issue, Se.H. again requested a hearing on January 22, 2014. Finally, on February 25, 2014, Appellants, having never received a due process hearing on the 504/ADA counts, filed a civil action in the district court asserting those claims.

Against this backdrop, the district court's cursory dismissal of Se.H.'s discrimination claims because of the IDEA ruling undermines the purposes of federal civil rights laws. The decision below circumscribes the remedies available to plaintiffs in this case *because* they also enjoy separate and distinct protections under the IDEA. The public policy behind the IDEA is to provide appropriate education, but the policy behind Section 504 and the ADA is to, *additionally*, ensure that individuals with disabilities have access to public education on a non-discriminatory basis. The decision below undermines both the IDEA and federal civil rights laws by allowing school districts to manipulate procedures so that children with IEPs will not have access to court to redress civil rights violations.[2]

### B. The Decision Below Results in an Incoherent Interpretation and Application of the IDEA, Section 504, and the ADA

"When . . . statutory 'language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296-297 (2006) (quoting *Hartford Underwriters Ins. Co.* v.

---

[2] This is even more troublesome and readily lends itself to a claim of bad faith and gross misjudgment in a case where a school district revokes retroactively the administrative law judge's authority to hear Section 504 claims and then transparently manipulates the process to ensure that the student *never* gets an administrative hearing.

*Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (citations omitted). Thus, federal courts proceed with the understanding that, unless otherwise defined, statutory terms should be interpreted in accordance with their ordinary meaning. *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). At the same time, courts construe federal laws by not only reading the text but also "considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1330 (2011) (quoting *Dolan* v. *Postal Service*, 546 U.S. 481, 486 (2006)). This approach makes "statutes into more coherent schemes for the accomplishment of specified goals than they might otherwise be." Driesen, *supra*, 48 Wake Forest L. Rev. at 128.

As Professor Driesen notes:

> Coherence in turn helps legitimate law. To the extent we treat statutes as coherent schemes for accomplishing public ends, the law commands respect and obedience. Hence, when judges create rationales for statutory construction tying particular results to public objectives motivating congressional enactment, they increase the likelihood of faithful administration of the law, public acceptance of the law, and compliance with the law.

*Id*. Thus, when the statutory language is unambiguous and the statutory scheme coherent and consistent, judicial inquiry ceases. *Sebelius*, 133 S. Ct. at 1895.

Recent Supreme Court cases have repeatedly invoked this canon of statutory construction. In *Sebelius*, a case involving the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. 300aa-1, *et seq.* ("NCVIA"), the federal government argued for a definition of the term "filed" that would have precluded an award of attorney's fees, and was inconsistent with the plain meaning of the word "filed." The Court rejected that argument, because it is commonly understood that a claim is "filed" when it is delivered to and accepted by the appropriate court. 133 S. Ct. at 1893. Further, the Court observed, the government's position would undermine the goals of the fee provision in the NCVIA. A stated purpose of the fee provision was to enhance the opportunity for individuals to present claims by making fee awards available for "non-prevailing good faith claims." *Id.* (citation omitted). The government's interpretation would have discouraged counsel from representing NCVIA petitioners, which would undermine the statutory purpose.

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Court interpreted a Patent Act provision that provided for an award of attorney's fees to the prevailing party in "exceptional cases." *Id.* at 1756. The Supreme Court held that this language required that courts exercise "equitable discretion" in determining exceptional circumstances. *Id.* The

Court also found the Federal Circuit's rule for determining whether a case was "exceptional" to be inconsistent with the statutory language because it "superimpose[d] an inflexible framework onto statutory text that is inherently flexible." *Id.* In addition, the Federal Circuit's test would have rendered the fee-shifting provision in the Patent Act superfluous. *Id.* at 1758.

Likewise, coherent interpretation of Section 504 and the ADA, relying upon the plain meaning of the text as well as the purpose behind those laws and 20 U.S.C. § 1415(*l*), requires that this Court reject the district court's perfunctory disposition of the procedural claims related to those laws.

The plain language of Section 1415(*l*) establishes that IDEA does not restrict a student's ability to pursue claims under other federal civil rights laws, and "compliance with the IDEA does not automatically immunize a party from liability under" other federal laws. *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (discussing application of the IDEA, Section 504 and the ADA); *cf. K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1096 (9th Cir. 2012) (ADA imposes less elaborate procedural requirements but establishes different substantive requirements on public entities); *Hornstine v. Township of Moorestown Bd. of Educ.*, 263 F. Supp. 2d 887, 901 (D.N.J. 2003) (plaintiff provided with FAPE under IDEA but also subjected to unlawful discrimination). As the court noted in *K.D. ex rel J.D. v. Starr*, 55

- 10 -

F.Supp. 3d 782 (D. Md. 2014), Section 504 of the Rehabilitation Act provides an "independent source of rights" for students with disabilities, in addition to their rights under the Individuals with Disabilities Education Act. *See, also* Oberti *v. Bd. of Educ. of the Borough of Clementon,* 801 F.Supp. 1392, 140405 (D.N.J. 1992).

The statutes have separate purposes: Section 504 and the ADA provide relief from discrimination, while "the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." *Ellenberg v. New Mexico Military Inst.,* 572 F.3d 815, 822 (10th Cir. 2009) (citations omitted). Consistent with these distinct purposes, the two (2) statutes contain "separate statutory definitions of what it means to be disabled." *Id., quoting Bowers v. Nat'l Collegiate Athletic Ass'n,* 563 F.Supp.2d 508, 533 (D.N.J. 2008).

The district court disposed of plaintiffs' complaints related to deprivation of an administrative process to address 504/ADA discrimination claims with a passing comment devoid of legal analysis in a footnote. Specifically, the district court states: "Plaintiff complains of procedural irregularities. Assuming that they occurred, they are immaterial because, for the reasons stated, the emergency plan that defendant has in place for Se.H. complies with applicable law [the IDEA]." *Op.* at 3 n.1.

- 11 -

However, the fact that an administrative hearing officer found that the IEP complied with the IDEA does not address, in any way, the question of whether the school district committed an independent violation of the ADA and Section 504, which have different legal requirements and standards of proof. Further, the disposition of this case has the effect of stripping plaintiffs of any and all rights under Section 504 and the ADA merely because they had access to a hearing under the IDEA.

Section 504 and the IDEA have substantively different requirements. While both IDEA and section 504 require the provision of an appropriate education, the FAPE requirements under the two (2) statutes are "overlapping but different." *Mark H. v. Lemahieu,* 513 F.3d 922 (9th Cir. 2008). Under Section 504, FAPE means education and services "designed to meet the individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met." 34 C.F.R. § 104.33(b)(1). Section 504 thus creates a "comparative" obligation, one that is satisfied by designing an educational program for a child with disabilities that is "intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more." *Mark H. v. Lemahieu,* 513 F.3d at 936-37. In contrast, under IDEA, FAPE means "special education and related services

- 12 -

… [that] are provided in conformity with the individualized education program required under section 1414(d)." 20 U.S.C. § 1401(9).

The student in the case at bar has life threatening food allergies. His disability makes him eligible for accommodations under Section 504 and the ADA. In fact, there are separate regulations, enforced by an entirely different federal agency, addressing food-related allergies in school. Department of Agriculture regulations related to the National School Lunch Program prohibit discrimination on the basis of disability in violation of Section 504. *See,* 7 C.F.R. § 210.23(b); *See, also* _Accommodating Children with Special Dietary needs in the School Nutrition Programs: Guidance for Food Service Staff_ (available                                                                at http://www.fns.usda.gov/sites/default/files/special_dietary_needs.pdf). No administrative or judicial officer has determined whether this type of infraction occurred, because the IDEA simply does not address these issues and there was no impartial hearing made available to the student under Section 504 and the ADA.

As in *Sebelius*, the statute manifests a clear and plain meaning that supports plaintiffs' position here - that they were entitled to some administrative procedure to address and redress their distinct discrimination claims under Section 504 and the ADA. The failure to provide any procedure

- 13 -

coupled with the failure of the district court to apply any substantive analysis to Plaintiffs-Appellants' claims of discrimination and denial of a reasonable accommodation under these civil rights ignores straightforward, unequivocal statutory language. As in *Sebelius,* the alternative reading, the one employed by the district court, results in an incoherent interpretation of the statutes. As in *Octane Fitness*, the district court's interpretation renders the saving provision in Section 1415(*l*) superfluous.

### C. The District Court Decision Ignores Mandatory Procedural Requirements in Section 504 and the ADA and Fundamental Constitutional Due Process Protections

In *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), the Court stated that "it is doubtful that any child may reasonably be expected to succeed in life if he is denied" educational opportunity. *Id.* at 493. Although there is no constitutional right to a public education, it is not "merely some governmental benefit indistinguishable from other forms of social welfare legislation." *Plyler v. Doe*, 457 U.S. 202, 221 (1982). Given the importance of public education in our society, the district court's ratification of deprivation of access to an appropriate public education with *no* due process protections must be reversed. The lack of access to a hearing in this case violated not only

- 14 -

Section 504 regulations, but also constitutional procedural due process protections.[3]

Section 504 regulations require that school districts maintain "a system of procedural safeguards that includes notice, an opportunity . . . to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure. 34 C.F.R. § 104.36. A school district *may* use the safeguards in the IDEA as procedural safeguards for Section 504 claims. *Id.* However, school districts "may, if they choose, establish a hearing system different from that which applies to IDEA disputes. Indeed, IDEA hearing officers in a number of jurisdictions, [including Maryland[4]], lack the authority to entertain section 504 claims." Mark C. Weber, *Procedures and Remedies Under Section 504 and the ADA for Public School Children with Disabilities*, 32 J. Nat'l Ass'n Admin. L. Judiciary 611, 632 (2012).

The Section 504 regulations guarantee an impartial hearing. 34 C.F.R. § 104.36. The failure to provide a disinterested individual to adjudicate claims

---

[3] The Board's Section 504 Policies and Procedures, on their face, violate Office of Civil Rights Section 504 regulations. *See, Appellants' Br.* at 40-43. As discussed more fully herein, the application and manipulation of those procedures in this case resulted in particularly egregious violations.
[4] Unlike the local jurisdiction in *K.D. v. Starr*, Defendant-Appellee Board in this case rejected the use of the Office of Administrative Hearings to hear Section 504 complaints opting to create their own system. JA at 51, 90.

implicates the right to an impartial hearing, under Section 504 and the due process clause of the United States Constitution. Weber, *supra*, at 636 (citing *Gibson v. Berryhill,* 411 U.S. 564, 579 (1973); *Ward v. Monroeville*, 409 U.S. 57, 59-60 (1972); *Turney v. Ohio*, 273 U.S. 510, 531-533 (1927)). *Cf. K.D.,* 55 F. Supp at 787.  Thus, "[i]nterests that threaten impartiality undermine constitutional due process rights in section 504 cases, just as they do in cases under IDEA and other laws. *Id.*

Principles of procedural due process also call for the right to present oral testimony and cross-examine the other party's witnesses. "In *Goldberg v. Kelly,* 397 U.S. 254, 256-258 (1970), the Supreme Court ruled that confronting adverse witnesses and presenting one's own arguments and evidence orally are due process minima in the context of termination of welfare benefits." *Id.* at 636. The level of procedural process due in a case involving educational access would "surely be great enough to compel the same rights to effective participation in a hearing as found to be required for a pre-termination welfare eligibility hearing [as in *Goldberg*], or a claim for relief from being required to repay government benefits." Weber, at 637.  It is undisputed that Se.H. *never* had any procedural protections in connection with his Section 504 and ADA claims.

- 16 -

In this case, the school district manipulated the situation to ensure denial of access to any hearing procedure for Se.H.'s Section 504 and ADA claims. The Board retroactively revoked the authority of the hearing officer to hear Se.H.'s 504/ADA claims and then refused to make a timely hearing available to the student to adjudicate his claims.  These actions violated statutory and constitutional due process protections. The district court committed a significant legal error when it validated the school district's manipulation of the hearing system to deny Se.H. mandated procedural protections.

## CONCLUSION

The district court committed reversible error in failing to analyze Plaintiffs-Appellants' Section 504 and ADA claims. Further, the court erroneously ratified the Board's manipulation of the process to deny a fair hearing on those claims, in violation of statutory, regulatory, and constitutional requirements. The decision below, which ignores the plain language of the Act and subverts federal civil rights laws, should be reversed.

Respectfully Submitted,


*s/ Mark B. Martin*_____
Mark B. Martin
Law Offices of Mark B. Martin, P.A.
One N. Charles Street, Suite 1215
Baltimore, Maryland  21201
(410) 779-7770
Federal Bar ID 11688
Counsel for *Amicus Curiae*

Dated: July 22, 2015

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Federal Rule of Appellate Procedure Rule 32 (a)(7)(C)(i), the attached brief is proportionally spaced, has a typeface of 14 points, and according to the word-count feature of Microsoft Office Word 2013, contains 4,634 words, including footnotes, but not including parts of the brief exempted by Rule 32(a)(7)(B)(iii).

*s/ Mark B. Martin*
Mark B. Martin

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Manisha Sharad Kavadi
CARNEY, KELEHAN, BRESLER, BENNETT & SCHERR, LLP
10715 Charter Drive, Suite 200
Columbia, Maryland  21044
*Counsel for Appellees*


Selene Almazan-Altobelli
LAW OFFICE OF SELENE ALMAZAN, LLC
43 Randolph Road, Suite 202
Silver Spring, Maryland  20904
*Counsel for Appellants*


I further certify that I caused the required copies of the Brief of *Amicus Curiae* to be hand filed with the Clerk of the Court.

*s/ Mark B. Martin*
Mark B. Martin